CITIZENS' BANK v. FRAZIER.

(Division B.    April 14, 1930.)

[127 So. 716.    No. 28588.]

Magruder, Walker & Magruder, of Starkville, for appellant.

Daniel & Greene, of Starkville, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Early in the fall of 1928 appellant bank solicited the cotton account of appellee, and in response thereto it was proposed by appellee that the business would be given to appellant, provided the latter would keep the cotton insured up to the aggregate amounts of all loans made to appellee for cotton purchases, to which provision appellant agreed. In pursuance of said arrangement appellee, on October 6, 1928, obtained from appellant a loan of two thousand five hundred for said cotton account, and gave his note secured by a deed of trust on forty-five bales of cotton, said then to be stored in appellee's cotton warehouse. At this date the cotton appears to have been insured for three thousand dollars. On October 27, 1928, appellee borrowed from the bank an additional sum of three thousand dollars, and secured same with a deed of trust on forty-one additional bales, said to have been likewise stored. This last loan was made on Saturday about noon. The bank immediately requested its bookkeeper, who was a subagent for a principal insurance agency at Starkville, to procure insurance for an additional amount of two thousand five hundred so as to make the total insurance, held by the bank on said cotton, equal to the said loans of five thousand five hundred dollars. The said subagent thereupon attempted to get into communication with the principal agency by telephone, but was unsuccessful by reason, as it is alleged, of faulty telephone equipment, and, after two or three such attempts, he finally wrote a letter to the said principal agency. This letter was not mailed until after the close of business on Saturday night. However, had the letter been mailed earlier, it would not have reached Starkville before the close of the principal agency office; the evi-

dence being undisputed that the said principal agency closed at four-thirty p. m. on Saturday and did not re-open until Monday morning. No other steps than those mentioned were taken to procure the additional insur-ance, and appellee was not notified of the failure. On the Sunday night following the warehouse and all the cotton therein was burned. The bank, having collected the three thousand in insurance, credited the proceeds to the said two notes, and demanded payment of appellee of the balance, which payment appellee refused on the ground that the bank had agreed to keep the cotton in-sured up to the full amount of both loans, and had failed to do so.

The course of the trial in the circuit court seems to have proceeded in the main on the theory, on the part of counsel for appellee, that the contract between ap-pellee and the bank was that the bank itself had thereby become, in effect, the insurer of the cotton, and appellee obtained an instruction, the terms of which cannot be reasonably interpreted, except on that theory, or else upon the theory that the agreement bound the bank to the procurement of the insurance in any event; all hazards of a failure so to procure being at the risk of the bank. To these theories, counsel for the bank have re-sponded that either of them would be ultra vires in re-spect to the bank, and most of the argument here has been upon this phase of the case.

In our opinion there is no real issue of ultra vires, for two reasons: First, if by the contract the bank became the insurer of the cotton, then the contract was void, not by reason of the doctrine of ultra vires, but because wholly illegal and prohibited under section 2563, Code 1906 (section 5818, Hemingway's 1927 Code) ; and, if the contract was one to procure insurance absolutely and without regard to whether the bank, after diligent ef-forts could procure it, then there is authority to the effect that this, being the equivalent in substance of the bank becoming the absolute insurer, is also illegal and void, so far as concerns a banking institution. But we do not find

it necessary to decide the last-mentioned question, and do not decide it, because, in the second place, the contract as made between the parties in this case does not reasonably bear the construction as contended for under either of the stated theories, looking to all the surrounding circumstances when the contract was made, the previous dealings of the same nature between the parties, and ascribing to the parties reasonableness of purpose and fair and just intentions. It is the duty of courts to give to a contract that construction or interpretation, if possible, which will square its terms with fairness and reasonableness, each party toward the other, and, moreover, that its terms shall be construed, if possible, so as to make it legal, rather than take another course of construction which would make it either absolutely illegal or else would seriously endanger it on that issue.

With all these considerations in view, and having carefully and minutely examined this entire record, we are of opinion that the only reasonable and just view that can be taken of this transaction is that the contract made between the parties, and its effect, was one by which the bank agreed to act for appellee in procuring the insurance, and to use that degree of diligence and care thereinabout which a reasonably prudent man would ordinarily exercise in the transaction of his own business of a like nature, and this includes, of course, the obligation, if the facts of the case raise such an obligation, of furnishing to the principal the proper and pertinent information concerning the progress of the business thus intrusted. Our view is that the obligation of the bank to appellee in respect to the procuring of the insurance was that of agent and principal, and that the case should be submitted to the jury, with proper instructions, under the well-understood rules which govern that relation.

The case having been tried under a different, and, in our opinion, an erroneous, theory of the law as applied to the facts, the judgment is reversed and the cause is remanded for a new trial under the principles herein pointed out as those which are proper to govern.

Reversed and remanded.