252 So.2d 202 (1971)
Glynne A. SIMPSON et al.
v.
M-P ENTERPRISES, INC.
No. 46081.
Supreme Court of Mississippi.
June 28, 1971.
Rehearing Denied September 14, 1971.
*203 Young, Young & Scanlon, Butler, Snow, O'Mara, Stevens & Cannada, W. Scott Welch, III, Roger C. Landrum, Sullivan, Sullivan & Keyes, Jackson, for appellants.
Watkins & Eager, Elizabeth Hulen, Hassell H. Whitworth, Jackson, for appellee.
INZER, Justice.
This is an appeal by Glynne A. Simpson, Jesse H. Bardin, Aaron B. Dupuy, Jr., Harold W. Busching and Dupuy-Busching General Agency, Inc., from a decree of the Chancery Court of the First Judicial District of Hinds County awarding appellee, M-P Enterprises, Inc., a joint and several judgment against the appellants for the sum of $13,733. The decree also awarded appellee a judgment against Simpson and Bardin, doing business as Bardin-Simpson Insurance Agency, for $729.83 representing unearned surplus line tax refund and a credit balance on an open account. The decree further awarded appellant, Jesse H. Bardin, as cross-complainant, individually a judgment for $3,249.84 against appellee M-P Enterprises, Inc., cross defendant for the balance due on a promissory note assigned to Bardin by Deposit *204 Guaranty National Bank. A cross bill by Bardin against Harold W. Busching, Aaron B. Dupuy, Jr. and Dupuy-Busching General Agency, Inc., was dismissed with prejudice.
M-P Enterprises, hereinafter referred to as M-P, is a Mississippi corporation engaging in the business of manufacturing pylofoam and cotton felt at its plant in Houston, Mississippi. It carried $658,000 insurance on its buildings and contents. In March 1967 some of the companies carrying a part of its insurance cancelled their coverage. M-P contacted Glynne A. Simpson, referred to as Simpson, a partner with Jesse H. Bardin, referred to as Bardin, doing business as Bardin-Simpson Insurance Agency, referred to as Bardin-Simpson, to secure coverage it needed to replace the cancelled insurance. Bardin-Simpson agreed that they would secure the coverage, but they felt that they needed assistance and on their own accord contacted Aaron B. Dupuy, Jr., referred to as Dupuy, and Harold W. Busching, referred to as Busching, owners and operators of Dupuy-Busching General Agency, Inc., and referred to as Dupuy-Busching, to assist them in placing the coverage. Simpson informed M-P of this fact and this action was acquiesced in by M-P, since it was relying on Simpson to secure the necessary coverage. Dupuy-Busching was able to place the M-P insurance risk through several different companies. However, in August the companies carrying eighty percent of the coverage cancelled.
Being unable to place the coverage through admitted companies qualified to do business in Mississippi, Dupuy and Busching went to Chicago where they contacted Whitcomb & Associates, insurance brokers, hereinafter referred to as Whitcomb. They dealt with a representative of that agency named Bedrosian. By September 27, 1967, M-P was notified that the necessary coverage had been secured with $460,000 of the coverage purportedly placed with Fidelity General Insurance Agency effective September 22, 1967.
A policy was issued by Fidelity General Insurance Company on the application of Whitcomb. It was dated October 4, 1967, in the amount of $29,400 with the effective date of September 29, 1967, to September 29, 1968, by an endorsement the amount of the coverage was increased to $32,900. Attached to the policy when received sometime later were two other endorsements purportedly issued by Fidelity, one of which amended the effective date of the policy to September 22, 1967, instead of September 29. The other increased the coverage by $427,700, making a new total of $460,600. These two endorsements were signed "Charles A. White" by a person whose initials appeared to be "T.B."
After M-P was notified that the necessary coverage had been secured and that $460,600 was purportedly placed with Fidelity General Insurance Company, it immediately arranged to and did pay the premium for the full coverage. It borrowed $24,276.26 from the Deposit Guaranty National Bank and executed a promissory note for that amount. The note was payable in eight monthly installments of $3,155.92. Bardin-Simpson executed as a part of this transaction an insurance agency guarantee wherein they warranted that the policies listed on the note were valid and in full force and effect. They also guaranteed that if any representation relative to the policies listed was inaccurate or incorrect that they would pay the balance due on the note. They further agreed with the bank that any returned unearned premiums due M-P on the policies would be paid to the bank. Bardin-Simpson received the proceeds of this note, together with a check from M-P in the amount of $8,092.08, making a premium payment of $32,368.34. From this amount Bardin-Simpson deducted its ten percent commission and forwarded the balance to Dupuy-Busching. Dupuy-Busching sent Whitcomb $5,000 on October 2, 1967, but retained the balance of the premium until in December 1967. At that time M-P was notified by Whitcomb that unless the balance *205 of the premium was immediately received that M-P's insurance would be cancelled. M-P, believing that unless Dupuy-Busching forwarded the balance of the premium to Whitcomb its insurance would be cancelled, insisted that Dupuy-Busching remit the balance of the premium. Dupuy-Busching then paid Whitcomb $14,041.90 and gave Whitcomb credit on its books for the balance due Dupuy-Busching on a separate transaction.
On September 27, 1967, M-P suffered a fire loss which was adjusted by Church Adjustment Company of Tupelo at the request of Dupuy-Busching. When Church reported the loss to Fidelity it notified Dupuy-Busching that the loss was not covered by its policy for the reason that it occurred prior to the effective date of the policy and that its coverage was limited to $32,900. Also, it advised Dupuy-Busching that its policy was being cancelled effective December 1, 1967. Dupuy-Busching did not advise M-P of the contents of this letter and on November 29, Dupuy-Busching received a telegram purportedly sent by Fidelity to disregard the notice of cancellation. On December 30, 1967, Whitcomb sent M-P a check for $5,717.25 which according to letter of transmittal was 42 percent of the $13,612.50 due M-P as a result of the September 27, 1967, loss. On January 26, 1968, M-P received a check from Whitcomb for $1,497.37 as payment on the loss. On March 5, 1968, M-P received another check from Whitcomb for $680.62, and finally on March 18, 1968, M-P received a check from Whitcomb for $5,717.26 representing the balance due as a result of the loss.
On April 11, 1968, M-P, having secured insurance through another agent in other companies, sent Whitcomb notice to reduce its coverage by thirty percent and thus became entitled to a return premium of $2,902. Thereafter on June 21, 1968, it cancelled the balance of its coverage that it had secured through Bardin-Simpson and then became entitled to an additional return premium of $5,182, making a total of $8,084 which has not been paid.
When the final installment of the note to the bank became due, M-P refused to pay it and notified the bank that it was entitled to the returned premium from Bardin-Simpson which was more than enough to cover the payment. The bank told M-P to ignore its demands that they would require Bardin-Simpson to pay on the guarantee. Bardin then paid the balance on the note, and the bank assigned the note to him. He then filed suit against M-P in the county court of Hinds County seeking a judgment on the note.
In the meantime M-P not having received the premium refund, requested its attorney to collect the premium. The attorney in his investigation discovered that the endorsements changing the effective date of the insurance and the endorsement increasing the amount of the insurance were not executed by an authorized agent of Fidelity Insurance Company. M-P then filed this suit in the chancery court against the appellants seeking a discovery and an accounting. It alleged by virtue of the unauthorized endorsements its increased coverage never became effective and that it was entitled to a return of the premium for the increased coverage in the amount of $24,569.05, for which it prayed for a monetary judgment.
Bardin-Simpson had dissolved its partnership in the latter part of 1968, and Simpson at the time the suit was filed was working for Dupuy-Busching. Bardin filed a separte answer and a cross bill. In his answer he denied that he was liable to M-P for any amount and by a cross bill he sought to recover the balance due on the note assigned to him by the bank, together with interest and attorney's fee. It having been agreed between M-P and Bardin that the suit in county court would be dismissed and the matter settled in one suit. Bardin also sought to recover by a cross bill from M-P the sum of $1,637.09, alleged to be due it by M-P on an open *206 account. By agreement of the parties Bardin filed a cross bill against Dupuy-Busching and Dupuy and Busching wherein he sought a monetary judgment against them for any amount that the court might determine that M-P was entitled to recover against him for the reason that the failure to secure the coverage was the fault of Dupuy-Busching who agreed to secure the coverage.
Dupuy, Busching, Simpson and Dupuy-Busching filed a separate answer denying that M-P was entitled to recover anything from them. They also set up affirmative defenses including estoppel. Dupuy-Busching also answered the cross bill of Bardin and denied that he was entitled to any relief against them in the event M-P secured a judgment against him.
M-P in its answer to Bardin's cross bill admitted that if it recovered a judgment that Bardin was entitled to recover on the note, but denied that he was entitled to recover interest and attorney's fee. It also denied that it owed Bardin anything on the open account, but alleged that Bardin had failed to give it proper credits and that it was entitled to recover a balance from Bardin.
A trial was had and the chancellor found (1) that the two questioned documents; namely, the endorsements on Fidelity's general insurance policy were not valid and binding and enforceable against Fidelity General Insurance Agency; (2) that M-P had paid premiums of $27,345.50 for these endorsements, but had only received in return therefor the sum of $13,612.50 as a result of a fire loss; and a judgment was rendered for the difference of $13,733 against all defendants, jointly and severally; (3) that M-P was entitled to the sum of $473.39 from Bardin-Simpson as unearned surplus line insurance tax; (4) that M-P was entitled to a credit balance on the open account of Bardin-Simpson for $256.44; (5) that Bardin was entitled to the balance on the premium note of $3,249.84, but that Bardin was not entitled to interest and attorney's fee; (6) that Bardin's cross bill against M-P on the open account and Bardin's cross bill against Dupuy-Busching should be dismissed. A decree was entered in accordance with the findings of the chancellor; hence this appeal.
Bardin filed a separate assignment of errors and brief. All the other appellant filed a joint assignment of error and brief. Appellants first contend that the chancellor was in error in finding as a fact that the two endorsements in question were invalid. We find no merit in this contention. The testimony of Charles A. White established that these endorsements allegedly signed by him did not bear his signature and that he did not authorize anyone to sign for him. His testimony established without contradiction that Whitcomb was only a local broker and that it was on his application that the $32,900 coverage was issued by Fidelity effective September 29, 1967. There was no record in the underwriting department showing any increased coverage, and Whitcomb was never an agent of Fidelity General Insurance Company and could not bind the company in any way concerning coverage. We think the chancellor was amply justified in finding that these two endorsements were invalid and that the increased coverage for which M-P paid a premium never became effective and that the appellants were liable to M-P for the return of the premium which it paid and did not receive coverage.
It is next contended that the chancellor was in error in failing to find that M-P was estopped from denying that the Fidelity Insurance Company policy and the endorsement were valid since it accepted and received benefits under the provisions of the endorsement. We are of the opinion that the chancellor was correct in refusing to apply the doctrine of estoppel in this case. At the time M-P accepted the payments by Whitcomb on *207 its fire loss, it did not know that the loss was not covered by the Fidelity policy. There is no proof that Fidelity paid any part of the loss which M-P received. It is evident that these payments were paid by Whitcomb and not Fidelity. There can be no estoppel by acceptance of benefits in ignorance of the facts by the party allegedly estopped. Furthermore, appellants benefited by the payments from Whitcomb to M-P since the payments reduced their liability. When appellants failed to provide effective coverage as they agreed to, M-P was entitled to recover the premiums paid, which in the absence of the payments by Whitcomb, would have been the full amount sued for. It seems to be a well-settled rule that if an agent or broker with a view of being compensated agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for any damage that results thereby. The measure of damage for such failure is stated in 29 A.L.R.2d Insurance Broker or Agent  Liability § 3, pp. 174, 175:
As to the measure of liability of an insurance agent or broker for his failure to procure insurance, where a loss is suffered by the intending insured, the courts have generally held that the damages should be equal to the amount that would have been due under the policy, provided it had been obtained. However, where no loss occurs the measure of damages has been stated to be the amount paid as the premium. If the policy procured is defective because of the terms and coverage provided therein, the measure of damages has been held to be the amount for which the insurer would have been liable had proper insurance been effected.
Except for the payment by Whitcomb, M-P was entitled to recover the full amount of the premium paid for the coverage it did not receive. We are of the opinion that the chancellor correctly held that since M-P received from Whitcomb $13,612.50, this amount should be deducted from the amount of the premium paid.
Appellants also contend that M-P is estopped from holding anyone liable except Whitcomb. This contention is based solely on a letter from M-P to Dupuy-Busching dated September 27, 1967. The proof shows that this letter was procured by Simpson at the request of Whitcomb and Dupuy-Busching. Simpson dictated the letter and it is as follows:
This is to advise you that Dupuy-Busching General Agency and Whitcomb & Associates are agents or Company of records and Glynne Simpson with Bardin-Simpson Insurance Agency will be local agent.
Prior to this time, M-P had never heard of Whitcomb. Furthermore, at the time this letter was written Bardin-Simpson and Dupuy-Busching had assured M-P that it had full coverage. The testimony shows that the purpose of this letter was to prevent other brokers from soliciting business and for the broker's protection against competition and not for the purpose of releasing appellants from any duties or responsibilities that they owed M-P. The letter was not intended to and it did not make Whitcomb a general agent for M-P.
We find no merit in the contention that the chancellor was in error in failing to hold that assuming the endorsements were invalid, they were nevertheless enforceful against Fidelity. This is based on the contention that under the law of this state Whitcomb was a general agent of Fidelity and could bind them for the full amount of the coverage. The proof simply does not support this contention.
Appellants urge other grounds for the reversal of the finding of the chancellor that they were liable to M-P for the returned premiums which it paid for insurance which it never received, but we find them to be without merit.
*208 We are of the opinion that the chancellor was correct in holding that appellants undertook to procure the insurance for M-P and accepted the premiums for such insurance and they were liable to M-P for the return of the premiums paid for insurance that never became effective.
Bardin contends that the chancellor was in error in failing to find that he was entitled to recover interest and attorney's fee on the note assigned to him by Deposit Guaranty National Bank. The note provided for interest and attorney's fee in the event it was placed in the hands of an attorney for collection. However, under the facts and circumstances of this case, we are of the opinion that the chancellor was justified in holding that Bardin was not entitled to interest or attorney's fee. At the time Bardin paid the bank the balance due on the note, he was indebted to M-P in an amount more than the amount he paid the bank. He admits that M-P at this time was entitled to recover at least the unearned premium on the Fidelity policy which amounted to $8,084. M-P paid the premium to Bardin-Simpson, and it was Bardin's duty as successor to Bardin-Simpson to collect and return the unearned premiums. The practical effect of what he was doing is that he paid the bank only what he agreed to do, that is, apply any returned unearned premium on the note. Under these circumstances he was not entitled to recover any interest or attorney's fee. Bardin also assigns as error the finding of the chancellor that Bardin-Simpson was liable to M-P for $729.83. We have carefully reviewed the evidence and we cannot say that the evidence does not support the chancellor in this regard. It appeared that the principal difference in the accounting was an error in figuring the unearned premium on other policies which had been cancelled. The proof established without conflict that this error was made and that Bardin had not given M-P proper credit on its books. Bardin contends that if he is required to give M-P credit, then he is entitled to recover this amount from Dupuy-Busching. We are not called upon to decide this question for the reason that this issue was not encompassed in the pleadings.
Bardin assigns as error the dismissal with prejudice of his cross bill against Harold W. Busching, Aaron B. Dupuy, Jr., and Dupuy-Busching General Agency. Bardin alleged in his cross bill that Bardin-Simpson was acting as soliciting agent and that they were relying solely upon Dupuy-Busching as general agents to write and have written the required insurance coverage for M-P. It was alleged that an implied and express contract existed between Bardin-Simpson and Dupuy-Busching that if said insurance policies were cancelled before the expiration date, Dupuy-Busching would return all unearned premiums, less the unearned commission of Bardin-Simpson. The prayer of the cross bill was that in the event Bardin should be held liable for any sums to complainant, then he should be awarded a decree and a monetary judgment over and against Dupuy-Busching for said sum. The proof in this case shows without contradiction that Bardin-Simpson did not represent any surplus line insurance carriers and in order to place the coverage for M-P it became necessary for them to seek the aid of a specialist. Dupuy-Busching specialized in surplus and excess line coverage. Dupuy-Busching agreed to secure the coverage and Bardin-Simpson relied solely upon them as general agents to place the coverage. The decision to place the risk through Whitcomb & Associates was made solely by Dupuy-Busching. It is apparent from this record that the real culprit is Whitcomb, who received the money for the premiums on the insurance and did not secure the coverage. Since Dupuy-Busching selected Whitcomb it was the responsibility of Dupuy-Busching to collect from Whitcomb the premium *209 and in turn, pay to Bardin-Simpson. Bardin-Simpson would then, of course, be required to pay it over to M-P. Bardin relies on the general rule that where the principal has recovered a judgment against his agent arising from the fault or neglect of a sub-agent, after paying the judgment the agent is the real party in interest and is entitled to maintain an action against the sub-agent for the amount of the judgment. 3 C.J.S. Agency § 303a(2). Bardin therefore contends that although he is held liable to M-P, he is entitled to recover any amount he is required to pay on the judgment from Dupuy-Busching. There is merit in this contention. The chancellor was in error in dismissing the cross bill. That part of the decree which dismisses the cross bill of Jesse H. Bardin against Harold W. Busching, Aaron B. Dupuy, Jr., and Dupuy-Busching General Agency, Inc. will be reversed. The relief prayed for in the cross bill will be granted by amending that part of the decree which awards M-P a judgment of $13,733 against Glynne A. Simpson, Jesse H. Bardin, Aaron B. Dupuy, Jr., Harold W. Busching and Dupuy-Busching General Agency, Inc. to provide that Aaron B. Dupuy, Jr., Harold W. Busching and Dupuy-Busching General Agency, Inc. are primarily liable for the payment of ninety percent of the judgment and that Jesse H. Bardin and Glynne A. Simpson are primarily liable for ten percent of the judgment, being the amount of unearned commission retained by Bardin-Simpson, but as to the balance of the judgment, they are only secondarily liable. Any party who is required to pay any part of the judgment for which he is secondarily liable shall be subrogated to the rights of M-P.
In all other aspects the decree should be and is affirmed.
Affirmed in part and reversed in part and rendered.
GILLESPIE, P.J., and RODGERS, JONES and BRADY, JJ., concur.