299 So.2d 192 (1974)
SECURITY INSURANCE AGENCY, INC., and Maryland Casualty Company of Baltimore, Maryland
v.
Wallace B. COX and wife, Mrs. Molly W. Cox.
No. 47620.
Supreme Court of Mississippi.
August 19, 1974.
Snow, Covington, Temple & Watts, Meridian, W.D. Moore, Philadelphia, for appellants.
*193 Alford & Mars, Philadelphia, for appellees.
SUGG, Justice:
Wallace B. Cox and wife sued Security Insurance Agency, Inc. and Maryland Casualty Company in the Circuit Court of Neshoba County, Mississippi and alleged that defendants negligently failed to renew a $3,000 policy of fire insurance covering plaintiff's rental house which was destroyed by fire on November 27, 1971. A trial resulted in a jury verdict and judgment against both defendants in the amount of $3,000 and both defendants appeal.
Security is a local insurance agency and handled insurance for the Coxes. In addition to the rental house, plaintiffs owned a home in which they resided which was insured for $20,000 under a policy procured by Security from Maryland. The first policy on the home property was for a 3 year period beginning October 4, 1968 and ending October 4, 1971; the second policy was for the 3 year period beginning October 4, 1971 and ending October 4, 1974.
Security also placed insurance with Highlands Insurance Company on the rental home owned by the plaintiffs in the amount of $3,000 for a one year period from June 24, 1968 to June 24, 1969. Highlands did not renew the policy on the rental home because they ceased doing business in Neshoba County. Mr. Harbour, Manager for Security, was informed by Mrs. Cox that they desired insurance on the rental house and that if he could not insure the rental house they would not keep the insurance on their home with Security unless Security could secure insurance on both houses. Pursuant to this conversation Security placed $3,000 insurance on the rental property with Maryland for the period July 12, 1969 to July 12, 1970. The policy was renewed by a second policy from Maryland running from July 12, 1970 to July 12, 1971.
Mr. Harbour testified that he told Mrs. Cox before July, 1971 that he had a notice from Maryland that it would not accept renewal of insurance on the rental house, but that Security represented other companies known as surplus line companies which would probably insure the rental house at a higher premium. He testified that Mrs. Cox told him that they would think about it and that they might not insure the rental house.
Both plaintiffs denied that such conversation took place and stated without equivocation that they relied on Security to send them notices in advance of the expiration of their fire policies; and, that they always paid upon receipt of such notices. Plaintiffs both testified that had they been advised that Maryland was not going to renew the policy they would have secured insurance on the rental house.
Mr. Harbour testified that it was Security's custom and practice to send renewal notices 30 to 40 days before expiration dates of policies when it could and that it was done "most of the time." He was then asked if he was not supposed to send the notices before expiration and his answer was: "If we can; that's our business."
Plaintiffs presented the case in circuit court on the theory that Security was their agent to procure insurance for them on both houses; that since Security agreed to procure a policy on the rental house in order to retain plaintiffs' insurance business on the home place, Security was under a duty to procure and keep insurance on both houses; and, further that Security was under a duty to notify them when the policies were to expire, but negligently failed to notify them that the policy on the rental house would not be renewed by Maryland.
We are of the opinion that this case is controlled by Citizens' Bank v. Frazier, 157 Miss. 298, 127 So. 716 (1930) where the bank solicited the cotton account of Frazier and in response thereto Frazier proposed that he would do business with *194 the bank provided it would keep the cotton insured up to the aggregate amount of all loans made by him. The bank agreed to this provision. Frazier then borrowed $2,500 from the bank for the cotton account and the cotton was insured for $3,000. He later borrowed an additional sum of $3,000 and secured it with a deed of trust on 41 additional bales of cotton, but insurance was not secured by the bank on the cotton.
Upon granting the second loan the bank immediately requested its bookkeeper, who was a subagent for an insurance agency in Starkville, Mississippi to procure insurance for the additional loan. The subagent attempted to get into communication with the insurance agency by telephone but was unsuccessful. He wrote a letter to the insurance agency which was mailed after the close of business on Saturday night, but it did not reach the insurance agency until Monday morning following. On Sunday night following the loan, the warehouse and all the cotton was burned. The bank collected $3,000 in insurance, credited the proceeds on the two notes and demanded payment of Frazier of the balance which payment Frazier refused on the ground that the bank had agreed to keep the cotton insured up to the full amount of both loans and had failed to do so.
The Court noted that the case was tried on the theories that the contract between Frazier and the bank made the bank the insurer of the cotton and that all hazards to procure the insurance were at the risk of the bank. The bank responded that under either view the contract was ultra vires in respect to the bank. The Court determined there was no issue of ultra vires for the reasons stated in the opinion and concluded that the contract did not reasonably bear the construction as contended for under either theory.
In an opinion by Justice Griffith, the Court then stated:
It is the duty of courts to give to a contract that construction or interpretation, if possible, which will square its terms with fairness and reasonableness, each party toward the other, and, moreover, that its terms shall be construed, if possible, so as to make it legal, rather than take another course of construction which would make it either absolutely illegal or else would seriously endanger it on that issue.
With all these considerations in view, and having carefully and minutely examined this entire record, we are of opinion that the only reasonable and just view that can be taken of this transaction is that the contract made between the parties, and its effect, was one by which the bank agreed to act for appellee in procuring the insurance, and to use that degree of diligence and care therein about which a reasonably prudent man would ordinarily exercise in the transaction of his own business of a like nature, and this includes, of course, the obligation, if the facts of the case raise such an obligation, of furnishing to the principal the proper and pertinent information concerning the progress of the business thus intrusted. Our view is that the obligation of the bank to appellee in respect to the procuring of the insurance was that of agent and principal, and that the case should be submitted to the jury, with proper instructions, under the well-understood rules which govern that relation. (157 Miss. at 302, 127 So. at 717).
It is our view under the holding of Citizens' Bank, Security was agent for plaintiffs for the purpose of procuring insurance on the rental home. When the plaintiffs entrusted their insurance business to Security for the purpose of securing insurance on the rental house in addition to that in force on the home place and relied on Security to give them renewal notices, Security owed plaintiffs the duty to use that degree of diligence and care with reference thereto which a reasonably prudent man would exercise in the transaction of his own business. Security was not *195 thereby absolutely required to procure the insurance, but was required to furnish its principal, the plaintiffs, proper and pertinent information as to such insurance which would include the duty to inform plaintiffs that Maryland was not going to renew the insurance on the rental house.
Security claimed that it notified the plaintiffs that Maryland was not going to renew the policy. This was denied by the plaintiffs and this question was decided by the jury adversely to Security on conflicting evidence. We therefore affirm the judgment against Security on the theory that they were negligent in failing to notify the plaintiffs that the policy on the rental house would not be renewed by Maryland.
We reverse the judgment as to Maryland because the policy of insurance expired by its own terms and Maryland was not a party to the agreement between Security and the plaintiffs.
Affirmed in part, reversed in part and rendered.
RODGERS, P.J., and PATTERSON, INZER, ROBERTSON and WALKER, JJ., concur.
GILLESPIE, C.J., and SMITH and BROOM, JJ., dissent.
BROOM, Justice (dissenting):
After considerable study and research, I am unable to agree with the majority opinion insofar as it held against the appellant, Security.
The appellees, Mr. and Mrs. Cox, are well educated people. They knew that their rental house fire insurance policy was an annual policy which would expire as of July 12, 1971. Four and a half months after the expiration date of the policy, fire destroyed the house.
Appellees' declaration, sounding in tort, alleged: "[I]t was the responsibility of Security" to issue a renewal policy and notify appellees thirty days prior to the policy's expiration date based upon past "practice" of appellants. An allegation that appellees relied upon the past "practice" was in their declaration. The decisive issue is: Has Security become legally liable in tort by departure from practice applied in past dealings with appellee? This Court in Simpson v. M-P Enterprises, Inc., 252 So.2d 202 (Miss. 1971) recognized the rule that an agent may be liable for negligent failure to procure such insurance as he agrees to procure for another. That rule rests upon duty by agreement or contract which is not true in the case before us where practice or custom is the basis of the alleged tort liability. See also Atlas Roof Mfg. Co., Inc. v. Robinson and Julienne, Inc., 279 So.2d 625 (Miss. 1973). In the case at bar the coverage Security agreed to furnish was in fact furnished but allowed to lapse.
Both the majority opinion and the appellees' brief failed to cite any Mississippi case or statute in support of the proposition that because of Security's past practice (to issue renewals and provide notice of the expiration of prior policies), a duty had arisen which would make Security liable for a loss occurring months after the last policy lapsed. Other jurisdictions have applied a rule that an insurer may be liable and not permitted to forfeit a policy without notice if he has uniformly followed a past practice of notifying policyholders that premiums are due for such a time that would lead insured persons to reasonably believe that they will receive such notice. 43 Am.Jur.2d Insurance § 554 (1969).
The majority opinion is based mainly on the case of Citizens Bank v. Frazier, 157 Miss. 298, 127 So. 716 (1930). I do not comprehend that case as authority for the court's decision in this case. As stated by Justice Griffith in Frazier, courts should construe or interpret contracts in such a manner as to "square its terms with fairness and reasonableness, each party to the *196 other... ." (Emphasis added.) Frazier is obviously distinguishable from the present case in that it sounded in contract rather than tort. However, the more important aspect of that case is that it requires "fairness and reasonableness" to be applied mutually between the parties. How can it be deemed fair or reasonable for appellees to recover when, having knowledge of the expiration date of their policy, they sat idly by and did nothing to procure other coverage until a loss occurred four and a half months after lapse of the policy? It is also to be noted that in Frazier the plaintiff's uninsured status and fire loss both became a reality almost simultaneously. Within a few hours after the bank failed to procure the insurance coverage which it agreed to provide, Frazier's cotton burned. During those few hours it was not reasonable for the plaintiff, Frazier, to be required to do anything in his own behalf because he had no reason to doubt or question but what coverage was in force on his cotton. There the bank failed to procure coverage which it agreed to procure whereas there was no such failure in the present case. Here, for almost half a year before the fire loss, the appellees, Mr. and Mrs. Cox, had in their very own possession a policy which was all the time saying to them by explicit terms, "I am lapsed  do something if you want coverage."
In the case of Minnick v. State Farm Mutual Automobile Insurance Company, 4 Storey 125, 174 A.2d 796 (Del.Super. 1961), the Supreme Court of Delaware ruled that the requirement of an insurer to give notice of the amount and date on which a premium is due may be based upon past practice or usage of the particular insurer. Significantly the Delaware court noted that the requirement of notice is not an absolute thing under all circumstances, and pointed out that when a premium payment is long overdue the insured must take action to protect himself. In Minnick the insured offered to pay the premium within a few days after the due date. The Minnick opinion states that the court did not imply "that because of insurer's error an insured can get free coverage indefinitely." In the case at bar, the majority opinion leaves unanswered the question of how long the appellees as insureds could have continued to enjoy the windfall of free coverage after the policy lapsed. Could such free coverage have continued for a year, or two, or on and on indefinitely?
My opinion is that the doctrine of avoidable consequences is applicable and bars recovery here. As stated in 22 Am.Jur.2d Damages section 30 (1965), "a party cannot recover damages flowing from consequences which that party could reasonably have avoided." In the same paragraph that authority says that the avoidable consequences doctrine "should be viewed as disability on (or a `no right' to) recovery of reasonably avoidable damages." The rule is stated similarly in 4 Restatement of Torts section 918 (1939); 25 C.J.S. Damages § 33 (1966).
This jurisdiction recognizes the avoidable consequences doctrine. In National Dairy Company v. Jumper, 241 Miss. 339, 130 So.2d 922 (1961) the court said: "One seeking to hold another for damages must use reasonable efforts to avoid or mitigate them" (emphasis added). The earlier case of Y. & M.V.R.R. v. Fields, 188 Miss. 725, 196 So. 503 (1940) cited with approval the rule from 4 Restatement of Torts, supra, and added:
This rule applies to all injuries wrongfully inflicted, whether by means of a tort or breach of a contract, and deals not with conduct of a plaintiff contributing to his injury, but with his failure to avoid the consequences of his injury after it has been inflicted, to avoid or diminish the damages resulting from his injury. Injury, strictly speaking, "means something done against the right of the party, producing damage, whereas damage is the harm, detriment, or loss sustained by reason of the injury."
*197 The doctrine of avoidable consequences differs from that of contributory negligence. Contributory negligence occurs either before or simultaneously with the wrongful act or omission of a tort-feasor. Avoidable consequences occur subsequent to such an act or omission of an alleged tort-feasor. 22 Am.Jur.2d Damages § 31 (1965). In the present case the doctrine of avoidable consequences is applicable under the authorities cited, supra.
In the case before us each of the rental house policies which appellants had procured for appellees was an annual policy. Having knowledge of such facts and being aware of the expiration date of the last policy on the rental house, appellees failed to prudently respond. Appellees' wounds (their uninsured fire loss) may be realistically viewed as self-inflicted rather than resulting from any tort legally attributable to Security. During the four months following the July 12 expiration date of their policy:
(1) Appellees made no inquiry about their coverage.
(2) They made no effort to obtain coverage from Security or any other source.
(3) They failed to offer any payment of premium.
(3) They took no action whatever.
(5) Appellees could have avoided the consequences of negligence alleged against Security.
Such prolonged indifference, inaction and complete lack of diligence or reasonable care on appellees' part removes this case from any category of cases in which recovery should be allowed on the theory that Security became a tort-feasor and liable by mere passive departure from past practice.
In the penultimate paragraph of the majority opinion this case seems to be disposed of as a simple jury issue on conflicting evidence. It is true that the issue of whether or not Security (as it contended it did) notified appellees that the policy of Maryland was not going to be renewed was submitted to the jury. Under circumstances not present here, the case would have been one appropriate for jury resolution. However, upon the facts and circumstances presented by appellees to the lower court, the avoidable consequences doctrine should have been recognized and applied as an insuperable barrier to recovery by appellees. When they rested, Security's motion for a directed verdict should not have been overruled.
The recently enacted Uniform Commercial Code (U.C.C.) provides that "custom, usage" and "course of dealing" between parties in proper cases may be ground for liability. Miss. Code Ann. §§ 75-1-102(2)(b) and 75-1-205(1) (1972). However, though not cited by the majority opinion or appellees, a perusal of the U.C.C. shows that the legislators by enacting it left intact in the jurisprudence of this state the fundamental concept that litigants (in tort actions arising out of commercial dealings) are duty bound to exercise reasonable care and diligence in their own behalf. Indeed, sections 75-1-102(3) and 75-1-203, Mississippi Code 1972 Annotated, affirmatively show that the U.C.C. contemplates that those who engage in business should demonstrate good faith, reasonable care and diligence.
The proof found in the record before us does not depict an example of insurance policyholders, appellees, being lulled to sleep by past practice of their agent, Security, for such a short time that appellees in the exercise of reasonable care or diligence in their own behalf, would not have avoided their plight or lack of coverage. Neither does the proof establish against Security any breach of duty arising out of past practice which, when weighed together with other facts and circumstances including gross lack of diligence by appellees, constituted a proper case for the jury to *198 decide. My judgment is that the trial court should have granted Security its requested peremptory instruction.
GILLESPIE, C.J., and SMITH, J., join in this dissent.