Bert Lee Frazier and his wife Mrs. Joan P. Frazier (Fraziers) appeal from a final decree of the Chancery Court of Lee County denying an extension of a lease contract between the Fraziers and Northeast Mississippi Shopping Center, Inc. (Shopping Center), which the Fraziers contend they were entitled to under the provisions of the lease. We affirm.
The issue on this appeal is the construction of the written lease between the parties.
 FACTS
On December 19, 1964, the Fraziers entered into a lease with Northeast Mississippi Shopping Center, Inc., for a building 80 feet by 30 feet in which to locate their second dry cleaning shop in Tupelo. The primary term of the lease was eight years, from September 1, 1964, to August 31, 1972. The monthly rental, by subsequent agreement was $165.
The lease also contained the following provisions:
 Lessees shall have two (2) four (4) year options to extend this year under the same terms as conditions as set out above. If the Lessees elect to renew the lease under said option, said lessees must give the Lessor written notice not less than 6 months prior to the end of the term of this lease.
 * * * * * *
 Five years after start of lease, Lessee has the option to request Lessor to expand the building an additional 20 feet or any part thereof, at the rear at an annual rental increase of 18-percent of total gross additional construction cost. Lessee retains the right to approve the bid reflecting cost of additional construction. The 20 feet immediately to the rear of the initial 82-foot building is construed to be under lease whether or not the Lessee exercises the additional option. If the option to expand is exercised, it is understood that this lease, inclusive of all options, shall be beginning anew.
[Emphasis added]
 * * * * * *
 In an effort to establish a general understanding of numerous other items, may we mention the following provisions:
 * * * * * * *Page 1053 
 (1) It is agreed that the Lessee and Lessor must mutually agree on all plans and specifications or else this lease is null and void.
Thus, by exercising the two extension options, the lease would run for a period of 16 years, from and after September 1, 1964, or to August 31, 1980.
On February 20, 1980, Frazier wrote the Shopping Center as follows:
 Dear Mr. Fain:
 As per the lease in caption, may I offer demand with special emphasis toward paragraph 3 on page 3 of the instrument. I have tentative plans to further diversify my services by going into the leather garment service business also. In connection therewith, I choose to extend the size of my building northward to encompass up to an additional 20' which will incorporate the full width of 30' ID. This further development will be of the same general specifications, materials, and labor-wise as is the existing building. All other facets and provisions of the lease shall be recognized as guidances. Please advise.
 Mr. Fain replied on March 5, 1980:
 Dear Mr. Frazier:
 This is to advise that the suggestions in your letter of February 20, 1980, and those set out in Mr. Tate's letter to me of the same date are not acceptable. It is our position that your lease with us expires on August 31, 1980. Unless a new lease containing terms acceptable to us has been negotiated prior thereto, we will expect you to surrender quiet and peaceable possession [sic] to us on August 31, 1980.
This was the genesis of the suit in the Chancery Court. We need not lengthen this opinion with all the injunctive proceedings. Suffice it to say it was the contention of the Frazier's in the Chancery Court that under the clear terms of the lease they had the right by this letter of February 20, 1980, to extend the lease. Or, that upon receipt of the letter, Shopping Center was obligated to take steps toward adding to the building and the lease would be automatically extended. Counsel for the Fraziers do not enlighten us precisely as to how many years the lease was to be extended. It is clear, in any event, they contend that the lease was thereby extended, and did not terminate August 31, 1980.
In his ruling the chancellor took dead aim on the first sentence to the above paragraph beginning as follows: "Five years after start of lease . . ." The chancellor then made the following pragmatic ruling:
 The proof shows that complainants requested an additional twenty (20) feet be added to their leased premises under this paragraph, thereby, according to them, extending the lease for another term of eight (8) years, with an option for eight years.
 The proof is this request for extension [sic] was made February 20, 1980, some fifteen (15) years and five (5) months after the start of the lease.
 THIS COURT IS OF THE OPINION the complainants, lessees, have lost their rights under the paragraph by not exercising same within the time agreed to in this section; that fifteen years and five months is unreasonable to extend the rights set out herein.
The contention by the Fraziers on appeal is that they had a clear, unambiguous right to extend the lease by their letter dated February 20, 1980, and even if ambiguity exists, the contract should be interpreted in their favor, since it was drafted by Shopping Center.
Shopping Center admits it furnished a form lease, objected to by the Fraziers, and contends that another was drafted, with this particular paragraph inserted at the special instance and request of the Fraziers. The record itself is ambiguous on this question.
Shopping Center contends on appeal that a clear interpretation of the lease requires we hold the Fraziers had a period of five years from and after September 1, 1964, the beginning of the lease, in which to *Page 1054 
exercise the rights contained in this particular paragraph, and no longer.
To say this paragraph is free from doubt ignores the fact that intelligent lawyers reading it have come to opposite views. It is not clear to this Court. In the absence of the two parties who signed it informing us precisely what was meant, the most enlightened argument from here to the millennium would never remove the cloud cast by the words.
Nor, do we have to agree with counsel for Shopping Center that the Fraziers only had five years to the day from and after September 1, 1964, in which to notify the Shopping Center of their desire for an addition in order to extend the lease. It is obvious they did not attempt to exercise any such right remotely within that time frame.
We content ourselves with fully agreeing with the chancellor that it was manifestly unreasonable for the Fraziers to wait some fifteen years and five months after the start of the lease, and just a little more than six months before its end, to exercise their rights under this paragraph.
There was no increase in rent for sixteen years in a centrally located shopping center in one of the liveliest cities in this state. To claim that by this February 20, 1980, letter the Fraziers extended the lease for another eight, twelve or sixteen years at the same rent is simply incredible.
Parties are bound by what they promise in writing. But, we are not bound to adopt a construction not compelled by the instrument in which we would have to believe no man in his right mind would have agreed to.
A construction leading to an absurd, harsh or unreasonable result in a contract should be avoided, unless the terms are express and free of doubt.
Years ago this Court stated in Citizens' Bank v. Frazier,157 Miss. 298, 127 So. 716 (1930), p. 302 of the Mississippi Reports: "It is the duty of courts to give to a contract that construction or interpretation, if possible, which will square its terms with fairness and reasonableness, each party toward the other . . ."
In Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954), we said:
. . . It is also well settled that the words of a contract should be given a reasonable construction, where that is possible, rather than an unreasonable one; and the court should likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. 17 C.J.S., Contracts, § 319, page 739; Citizens' Bank v. Frazier, 157 Miss. 298, 127 So. 716. "Constructions of contracts which would make them unfair or unjust are to be avoided, unless the terms are unambiguous and express." McCain v. Lamar Life Ins. Co., 178 Miss. 459, 172 So. 495, 500. [75 So.2d 59 at 65].
Also see: Glantz Contracting Co. v. General Electric Co.,379 So.2d 912 (Miss. 1980), p. 917.
Other states have announced the same rule in interpreting leases. Atlantic Discount Corporation v. Mangel's of NorthCarolina, Inc., 2 N.C. App. 472, 163 S.E.2d 295 (1968), p. 299 states: "A construction of a contract leading to an absurd, harsh or unreasonable result should be avoided if possible." AtlanticGreyhound Corp. v. Smithdeal, et al., (C.A. 4th Cir. 1951),192 F.2d 453, p. 458, states: "If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and injust results."
In Broida v. Hayashi, 51 Haw. 493, 464 P.2d 285 (1970), the Court states: "In construing a lease we must avoid an unreasonable interpretation if that can be done consistently with the tenor of the agreement and choose the most obviously just interpretation as the presumed intent."
Moreover, the right granted the Fraziers was a simple option, given without *Page 1055 
additional consideration, which they were free to exercise or ignore. On the other hand, until the time for the exercise of the option had expired, Shopping Center was bound by the option it granted. Shopping Center had no right to compel its exercise, or even be notified by the Fraziers of their intent to exercise the option until the right expired. It is for this reason Courts generally hold that time is of the essence in exercising a simple option. We stated in Poole v. McCarty, 229 Miss. 170, p. 176,90 So.2d 190 (1956): "Time is of the very essence of an option . . ."
In Robinson v. Martel Enterprises, Inc., 337 So.2d 698 (Miss. 1976), p. 703, we stated:
 As a general rule, time is of the very essence of an option contract. . . . When the option contract calls for giving notice of the grantee's intention to exercise the option, the great majority of courts have held that this provision is of the essence, and that upon failure to give timely notice, the option expires.
The Fraziers had the right to exercise the option five years after September 1, 1964, which was August 31, 1969. We must agree with the chancellor that the Fraziers had no right to wait over ten years following in which to exercise the option.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON AND SULLIVAN, JJ., Concur.
PATTERSON, C.J., not participating.