The primary issue of this appeal is the duty owed by a licensed surveyor to those with whom he has contracted to perform a survey.
The home of Douglas and Carol McKinnon was flooded during the Easter flood of 1979, but the McKinnons had no flood insurance. This suit was filed against Edwin Batte, the McKinnons' insurance agent, and T.E. McDonald Inc., a surveyor who erroneously certified that the McKinnons' home was not located in a special flood hazard area. From an adverse jury verdict in the Circuit Court of Hinds County the McKinnons perfect this appeal and make the following arguments:
(1) The court erred in its instructions as to the duties owed the plaintiffs by the defendant Batte in view of the law and the testimony of witnesses.
(2) The lower court erred in its ruling as to the testimony in relation to the duties and standard of care of the defendant McDonald.
(3) Defendant McDonald was negligent as a matter of law and the lower court erred in not giving the plaintiffs a judgment as to his liability in the premises alleged.
(4) The lower court erred in allowing testimony and instructions as to any duty of the plaintiffs to mitigate their damages.
 I.
Contemplating marriage, Douglas McKinnon and Carol Ethridge decided to buy a house at 3719 Montrose Court in Jackson, Mississippi. Before buying the house, Mr. McKinnon, a real estate broker and appraiser, retained the services of T.E. McDonald, a registered land surveyor, to make a survey of the subject property as required by the mortgage lender. The survey was made as of December 26, 1978, and erroneously indicated that the property was not located in the HUD special flood hazard area.
Mr. McKinnon next negotiated with Edwin A. Batte, Sr. regarding insurance coverage *Page 297 
for the house and property. Mr. Batte was a licensed insurance agent, real estate broker, and the father of a college friend of Mr. McKinnon. In addition, Mr. Batte had written an automobile policy for Mr. McKinnon.
Mr. McKinnon claims to have told Mr. Batte that he knew little about insurance matters and that he was placing himself in Batte's hands for proper insurance advice. Mr. Batte disputes that claim and contends Mr. McKinnon simply allowed Mr. Batte to write a homeowner's policy.
Prior to the closing date of the purchase of the house, Mr. McKinnon agreed to the homeowner's policy with coverage of $40,000. Mr. Batte originally submitted a policy with coverage up to $45,000, but Mr. McKinnon had him reduce the coverage by $5,000. Mr. McKinnon claims to have asked Mr. Batte whether flood insurance was necessary. Mr. McKinnon further claims that Mr. Batte replied it was not. Mr. Batte, on the other hand, denies any conversation prior to the flood concerning flood insurance.
Approximately nine weeks after the closing date, the Easter flood of 1979 occurred. The McKinnon's house was filled with over five feet of water and mud. The McKinnons, like many other unsuspecting Jackson residents, had no flood insurance.
After the flood Mr. McKinnon visited Edwin Batte's office and confirmed that he was not protected under a flood insurance policy. When asked why he had not suggested the McKinnons purchase flood insurance, Mr. Batte pointed out that the McKinnons' home was not located in a flood plane according to Mr. Batte's map. However, Mr. Batte was relying on an outdated map. The map Mr. Batte possessed, dated December 6, 1974, had been updated in a more recent map dated October 17, 1975. The updated map showed that the McKinnons' house was indeed in a flood prone area.
In the present case the McKinnons claim they relied on Mr. Batte and Mr. McDonald in determining whether their house was in a flood plain and in deciding whether to purchase flood insurance. A trial of this cause was held in March, 1983, and resulted in a jury verdict in favor of both defendants. From that verdict the McKinnons perfect this appeal.
 II. Did the lower court err in its instructions as to the duties owed the plaintiffs by the defendant Batte?
The McKinnons contend instruction DB-12 was given in error because it instructed the jury that things have occurred since the flood that might have changed the standard of care. However, the Court agrees with the appellees that the instruction was proper because it actually instructed the jury not to consider the changes that have taken place and to consider the changes that have taken place and to consider only the standard of care existing at the time of the alleged negligence.
"It seems to be a well-settled rule that if an agent or broker with a view of being compensated agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for any damage that results thereby." Simpson v. M.P.Enterprises, Inc., 252 So.2d 202, 207 (Miss. 1971). The standard of care of an insurance agent is "to use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business."Security Insurance Agency, Inc. v. Cox, 299 So.2d 192, 194 (Miss. 1974). The Court holds the jury was properly instructed as to the applicable standard of care for the defendant Batte. Jury instructions are intended to be read together and should be considered as a whole in determining whether a jury was properly instructed. Estate of Lawler v. Weston, 451 So.2d 739 (Miss. 1984); Jackson v. Griffin, 390 So.2d 287 (Miss. 1980).
 III. Did the lower court err in its ruling as to the testimony in relation to the duties and *Page 298 
standards of care of the defendant surveyor McDonald?
Surveyors may be liable in tort for failure to skillfully discharge their contractual obligation. Essex v. Ryan,446 N.E.2d 368 (Ind. App. 1983). A surveyor is required to exercise that degree of care which a surveyor of ordinary skill and prudence would exercise under similar circumstances. R.H. BowmanAssoc., Inc. v. Danskin, 72 Misc.2d 244, 338 N.Y.S.2d 224,aff'd, 43 A.D.2d 621, 349 N.Y.S.2d 655 (1972).
Defendant McDonald's jury instruction No. 5 reads:
 The court instructs the jury that in order for the McKinnons to recover any amount from defendant T.E. McDonald, Inc., the McKinnons must prove by a preponderance of credible evidence not only that T.E. McDonald, Inc. made a mistake in preparing the survey provided to the McKinnons but also that the mistake constituted negligence. Negligence means the failure to use that degree of care which the law requires of a person in a similar situation and under similar circumstances as involved in this case. T.E. McDonald, Inc. need only to have possessed and to have exercised that degree of skill and care of surveyors engaging in the practice of surveying in the Jackson, Mississippi area in December, 1978, under the same or similar circumstances as the engagement of T.E. McDonald, Inc. by the McKinnons in this case.
The McKinnons claim the giving of instruction DM-5 was error because it differentiated mistake from negligence and it imposed a locality rule applied to surveyors. The McKinnons further claim error in the court's refusal to give plaintiffs' instructions 14, 16, and 19. All three instructions referred to Mr. McDonald's mistake as negligence as a matter of law.
The Court holds the trial judge committed no error regarding the aforementioned jury instructions. Instruction DM-5 told the jury that Mr. McDonald's mistake must have resulted from "the failure to use that degree of care which the law requires. . . ." It seems clear that without a failure to comply with the applicable standard of care, there could be no breach of duty and consequently no negligence.
As for the McKinnons' argument concerning the alleged imposition of the locality rule, this Court agrees with the appellees that it is misplaced. There was no suggestion that the standard of care for surveyors in other locations was any different than in Jackson, Mississippi. The language apparently directed the jury to compare Mr. McDonald's degree of skill and care with that of others similarly situated. The Court finds no error in this assignment.
 IV.
The next element of negligence confronted by the McKinnons is causation. Each side looks to the testimony of certain witnesses to support its argument. Harris Collier, vice president and manager of the First National Bank's Legal Department, testified concerning the requirements of flood insurance. Mr. Collier testified that if property was in a flood zone the bank is required by the National Flood Act to see that the borrower has flood insurance.
The Court notes that 42 U.S.C.A. § 4104a. (West 1985) makes the following requirement:
 Each Federal instrumentality responsible for the supervision, approval, regulation, or insuring of banks . . . shall by regulation require such institutions, as a condition of making, increasing, extending, or renewing . . . any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Director under this chapter . . . as an area having special flood hazards, to notify the purchaser or lessee . . . of such special flood hazards, in writing, a reasonable period in advance of the signing of the purchase agreement, lease or other documents involved in the transaction. *Page 299 
According to Mr. Collier's testimony the bank receives its information as to the flooding capability of the property through numerous sources. One source is the flood map provided the bank by the National Flood Program. Other sources include the borrower, the surveyor, or the insurance agent. Mr. Collier further testified that the McKinnons should have been required to have flood insurance. On cross-examination Mr. Collier testified that there was no copy of Mr. McDonald's survey in the bank's file on the McKinnon loan. He further testified that he did not know why it was not there and that he saw no indication that it had ever been there.
The closing attorney did not remember the details of the McKinnon loan but testified that he generally depended on surveys to determine whether subject property was in a flood zone. He further testified that if property was in a flood zone it was his policy "to check with the two interested parties, one being the purchaser, the other being the lender, to determine if in fact they did want flood insurance."
During the testimony of the plaintiff, Douglas McKinnon, Mr. McKinnon stated generally that he had relied on both Batte and McDonald in his determination not to purchase flood insurance. But when asked specific questions concerning his reliance on Mr. McDonald's survey, Mr. McKinnon could not recall specifically relying on it. For example, Mr. McKinnon was asked, "Do you recall at this time whether you actually studied it closely enough to see whether the survey said anything about a flood proned area and the like?" He replied, "I can't say that I recall." Mr. McKinnon was also asked, "Was there any time from the closing of your property until the time it was flooded that you ever looked at the survey?" He replied, "I don't think so." Thus, in their quest to prove causation the McKinnons showed little evidence that Mr. McDonald's survey was actually relied upon by anyone related to the McKinnons' decision not to buy flood insurance. To the contrary, Mrs. Batte, the wife of one of the defendants, testified that Mr. McKinnon said in her office that his decision not to purchase flood insurance was based on a talk with his neighbors, who had never been flooded.
The jury received conflicting evidence on the question of causation. "Conflicts in the evidence are to be resolved by the jury, and before a reviewing court can interfere with the verdict, testimony must so strongly preponderate that the court can safely say it was overwhelmingly in favor of the appellant."Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980); Powers v.Malley, 302 So.2d 262 (Miss. 1974).
From the record, the Court holds the evidence of causation is not overwhelmingly in favor of the appellant.
 V.
Did the lower court err in allowing testimony and instructions as to any duty of the plaintiffs to mitigate their damages?
Appellate review of damage instructions is not pertinent in reviewing a verdict in favor of the defendant. Helveston v.Gibson Products Co., 192 So.2d 389 (Miss. 1966) holds, "The last assignment deals with an objection to the testimony regarding damages. Since the jury returned a verdict against appellant on liability, this assignment becomes moot."
The Court finds no reversible error in the actions of the trial court. The jury was properly instructed and held in favor of the appellees. Therefore the verdict of the jury will be affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
ANDERSON, J., not participating. *Page 300