CRABB v. COMIER.

(In Banc.  Feb. 10, 1941.)

[200 So. 133.  No. 34363.]

Sharp & Sharp, of Booneville, for appellant.

Adams & Long, of Tupelo, and J. S. Finch and J. A. Cunningham, both of Booneville, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant, as trustee for the Meridian Fertilizer Factory, a corporation, filed his bill to reform and foreclose a deed of trust given by appellee to the Factory. The defense was that the secured note embraced usury of more than 20 per cent, and was, in consequence, wholly unenforcible. The defense was sustained by the trial court.

The material facts are that appellee is a farmer residing a few miles from Booneville in Prentiss County. On February 8, 1938, the Factory appointed appellee as its agent to sell its fertilizer in that territory. The contract between them was in writing, and contained the following paragraph: "Principal shall furnish agent price lists in writing from time to time which shall be a part of this contract as effectively as if written herein. Said price lists shall state prices, terms and other conditions governing the sale of fertilizer not otherwise provided for herein. Each price list and any or all of its provisions are subject to change from time to time upon written notice from the principal. Every sale made by the agent shall be made subject to all the provisions of this contract including the price list effective on date of sale."

There was also the following provision in the contract: "Agents shall obtain cash from purchasers at the time of delivery to them of any of said fertilizers. Agents shall make full settlement and accounting, without demand, to principal at Hattiesburg, Mississippi, on the first of each month for all fertilizer shipped him during the previous month and carried over from preceding months, sold and on hand, and more often upon request of principal."

Further down in the contract there is this provision: "All deliveries and sales of fertilizers under this agreement, including those to agent, if any, shall be made with the guaranty only of analysis printed on the sacks," etc.

The price list mentioned in the paragraph first above quoted was furnished appellee within a few days after the date of the contract. The list showed the cash price for the various kinds of fertilizer and also the credit price, the latter being on the average about 10 per cent above the cash price. And while the second provision above quoted is to the effect that appellee should obtain cash from third party purchasers upon delivery to them, there is no stipulation in the contract that the agent himself should not select for his own use, and use on his own farm, a portion of the fertilizer shipped to him. And the

last-quoted provision seems to contemplate that this might be done.

And inasmuch as appellee was himself a farmer, and therefore a potential customer, it would seem hardly reasonable that the Factory would desire to exclude him as a user of its products, and since they had found him a sufficiently good credit risk to be allowed to sell to, and collect from, others for the Factory, it is reasonably to be assumed that at the date of the making of the contract the Factory deemed him worthy of credit for such of the fertilizers as he himself should select and use.

During March and April, next following the date of the contract, the Factory shipped to appellee fertilizers amounting, at the invoiced prices, to a total of $753.30. Before the first day of June, all the fertilizers thus shipped had either been sold by appellee to third parties, and the cash price collected by him therefor at the time of delivery by him to said third parties, or else had been used by appellee on his own farm. But appellee had remitted only $320.26, leaving a balance of $433.04. On this appellee was allowed a commission of $46.32, leaving a net balance of $386.72, if calculated throughout on the cash price basis.

When appellee failed to settle on June 1st, a Factory representative called on appellee who stated that he was unable to settle then for any part of the balance, and it was finally agreed that the Factory would allow appellee to pay the entire of the balance on November first, provided some security would be given and provided the amount would be calculated on the credit basis of approximately 10 per cent additional to the cash prices as invoiced at the time of the shipments. The agreement was carried out, and on June 24, 1938, appellee executed and delivered to the Factory a note for $427.89, due November 1, 1938, with 6 per cent interest after maturity, secured by a deed of trust.

When it was sought by the Factory to enforce the payment, as aforementioned, appellee took the position that

the 10 per cent additional was mere interest and that since the period between the date of the note and its maturity was less than six months, this made more than 20 per cent per annum. The position of the Factory was and is that since the payment for the fertilizers was not being made by appellee until the fall of the year, it was entitled to payment on the credit basis of the approximately 10 per cent additional carried into the note.

In Bass v. Patterson, 68 Miss. 310, 8 So. 849, 24 Am. St. Rep. 279, the court held that if there was an agreement between the seller and the buyer at the time of the sale that the price at which the goods were sold would be at a certain figure if paid within 30 days, but would be a price of 15 per cent more if not paid within 30 days, this would not be usury when the bottom price was not paid within 30 days, and when that price plus the 15 per cent was thereafter demanded by the seller. The court said that the question is whether the additional 15 per cent was by the contract of the parties a real part of the price of the goods sold, or stated in other words, whether the 15 per cent was a part of the price to be paid for the goods if payment was not made within 30 days, or whether on the other hand it was merely illegal interest added on the price entered on the books at the date of the sale.

Under this holding, had the parties to the present case agreed on the day or days that appellee selected and applied to his own use the fertilizers, which he did select and apply, that he would pay the cash price if he paid it within 30 days thereafter, in default of which he would pay the credit price of approximately 10 per cent additional, there would be involved no usury—there would be no interest involved, but a credit price only.

In the case before us, the seller was not present on the day or days when appellee selected and took over for his own use the fertilizers which he himself used. So far as the record shows, the seller was not advised of it at the time and it had been done before the seller was made

aware of it. In such a situation, the only way in which legitimacy may be given to the transaction on appellee's part as regards the fertilizers used by him is that he shall be held to have elected or agreed, in force of his conduct, to pay the cash price at the end of the month or else to pay the credit price of 10 per cent additional. When an agent, having in his possession the property of his principal, acts for himself and in his own interest as regards that property, the transaction, when completed to the extent that it is beyond recall, as in this case, must be given that interpretation which is favorable to the principal, rather than a construction favorable to the agent. This grows out of the inherent nature of the relationship of principal and agent, and the maintenance of the integrity of that relationship. See, for instance, McDowell v. Minor, 158 Miss. 788, 794, 131 So. 278.

But appellee insists that he had no authority whatever under the contract to use any of the fertilizer on his own farm, and that when he did so he was guilty of an unlawful conversion of trust property and was subject to a criminal prosecution therefor, and appellee appears entirely willing to stand before the court as a criminal wrongdoer if thereby he may evade this entire debt through the plea of usury. It is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage. As already shown, the facts are such as to permit us to treat appellee as a purchaser on the credit of all the fertilizer selected and used by him; and to strip him of an advantage which, when otherwise considered, would arise out of his own criminal conduct, we shall so hold and treat him.

And all of this gets back to another settled principle of the law, applied everywhere and in questions concerning usury as well as others, that when a transaction is upon all its real facts capable of two reasonable constructions, by one of which it will be legal and valid, while by the other it will be unlawful and usurious, the court will adopt

the former of the alternatives. 66 C. J., pp. 172, 173, and see Citizens' Bank v. Frazier, 157 Miss. 298, 302, 127 So. 716.

It follows from what has been said that as to all the fertilizers selected by appellee and applied to his own use, there was no inclusion of interest in the 10 per cent additional over and above the cash price. But as to the fertilizers sold by appellee to third parties, and for which he collected the money from them but failed to pay it over, there is no reasonable construction of that part of the transaction by which it can be held to be sales on credit. The insurmountable fact is that those were sales for cash and the cash was then and there paid. Plainly those were cash sales, and plainly appellee was a debtor to his principal for the amount of the money so collected from the third parties, and for nothing beyond the cash price so collected, plus interest within the legal limits for such time as appellee withheld the money from his principal.

No usury appears on the face of the note sued on, and in such cases the burden of proof of the usury rests upon the party who asserts it—in this case the appellee. 66 C. J., pp. 303, 304. The proof in this record does not disclose what part, if any, of the sum embraced in the note was for money collected by appellee from third parties and how much of it represented fertilizers used by appellee himself. Agreeably with the principles already discussed, the whole amount for the fertilizers used by appellee himself must be considered as included in the note. In the condition in which the record stands, it is evident, therefore, that it has not been shown that there is any usury at all, and it follows that the decree must be reversed and the cause remanded.

Reversed and remanded.

## DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

I am unable to perceive any difference of the evidence between the effect of Section 1946, Code of 1930, on that

portion of the note here sued on which represents the money collected by the appellee from persons to whom he had sold fertilizers for the appellant, and that which represents the value of the fertilizers appropriated by the appellee to his own use. In my opinion, the note violates the last clause of Section 1946 of the Code in whole or not at all.

The appellee's contract with the appellant required him to "obtain cash from purchasers at the time of delivery to them of any of the said fertilizers" and to account to the appellant when called on so to do for all fertilizers "sold and on hand." When called on for an accounting in June, 1938, the appellee had converted to his own use both the money collected for the fertilizers sold by him and the fertilizers which remained after the sales were made. He was therefore indebted to the appellant for the money so collected and for the value of the fertilizers used by him. The aggregate of these two items was $433.04. The appellant deducted therefrom $46.32 allowed the appellee as commissions for handling the fertilizers which left him indebted to the appellant in the sum of $386.22. To this the appellant, through its agent, added 10 per cent thereof or $38.67, and $2.50 paid by the appellant for recording a deed of trust then given the appellant by the appellee.

If, as the appellee claims, this 10 per cent added to the appellee's indebtedness to the appellant was interest thereon, the rate thereof, because of the short time the note had to run, exceeds 20 per cent per annum, and therefore violates the last clause of Section 1946, Code of 1930. If, as the appellant claims, the parties agreed in good faith that the fertilizers delivered to the appellee by the appellant for sale by him for the appellant should be considered as having been sold to him at credit prices, then no usury appears in the note. Which of these contentions is correct is a question of fact to be decided from the evidence, as to which the evidence is in direct conflict. That for the appellee supports the former and that for

the appellant supports the latter. The chancellor accepted the evidence for the appellee, and it cannot be said from the evidence that he was manifestly wrong in so doing. Consequently, his decree should be affirmed.