SUGG, Justice,
for the Court:
Complainant, Mrs. Mona R. Cain, filed a bill of complaint in the Chancery Court of the First Judicial District of Harrison County against her mother, Mrs. Undine Gunn Thomas, Hancock Bank and the five children born to the marriage of complainant and Donald Ruiz. Complainant sought to establish a constructive trust in her favor to one-half interest in 640 acres which had been deeded to her mother, who placed the proceeds from the sale of the land in trust with the Hancock Bank for the benefit of complainant’s children. The chancellor sustained defendant’s motion to exclude the evidence and dismissed the bill of complaint.
Complainant was married to Donald Ruiz who was murdered on November 28, 1973. Complainant worked in the office of her husband who was an attorney in New Orleans, Louisiana. On March 20, 1968, complainant and Ruiz purchased 320 acres of land and caused title to the property to be placed in the names of complainant’s parents, O. M. Thomas and Undine Gunn Thomas. On October 24, 1973, complainant and Ruiz conveyed 320.3 acres of land to complainant’s mother. On the same date O. M. Thomas conveyed to his wife, Undine Gunn Thomas the 320 acres previously conveyed to him and his wife in 1968. After the death of Ruiz, complainant conveyed by quitclaim deed to her mother the entire 640.3 acres on April 16, 1974, and by separate warranty deeds on the same date, conveyed to her mother the 320.3 acres previously conveyed to her mother by complainant and her husband, Ruiz.
Mrs. Thomas sold the 640 acres on August 15,1974, and on October 29,1974, placed the proceeds of the sale in trust with the Hancock Bank for the benefit of the five children of complainant and Donald Ruiz.
After the death of Ruiz, complainant married Clyde Cain on March 29, 1974. Cain was a former client of Ruiz, had served time in the Louisiana Penitentiary for a felony, and was charged with the murder of Ruiz. Cain was tried twice on the murder charge, the first trial resulting in a mistrial and the second in an acquittal. Cain worked for Ruiz for approximately two years before Ruiz died. At the time of the trial Cain was under an indictment on the charge of murder in Jefferson Parish, Louisiana and was resisting extradition from the State of Texas. Complainant testified that her mother “Opposed Clyde Cain . anything that he did, said or went as far as Clyde Cain goes was a problem.” Complainant also stated Cain, “[D]id not meet with what my family termed the proper social status.”
Complainant testified that title to the property was placed in her mother for the following reasons:
There were two reasons why it was done. Number one is that Donald was married twice before he married me and had children from both marriages. He felt like what he and I put together by our joint work efforts would have been for us and our children and that if anything happened to either one of us, our children, and/or he and I would be the ones to rightfully have the property. There would be no point in our having worked so hard to put together what we did and have the other children come in and claim their share and under Louisiana law, this could have, been done. Therefore, by putting the property in my mother and father’s names, they could not claim any portion thereof. The second reason was that we had a lot of creditors. There were many unpaid bills. There were many lawsuits filed in New Orleans against both of us. Under community property. They didn’t sue me every time. Sometimes I was. Sometimes it was only Donald. There were judgments taken and in order to keep *814 anything from being executed against the property, he put it in my mother’s name. If any judgment was then taken, they could not execute against the property because by all legal papers, the property was my mother’s and we had no interest therein. The reasons I just gave you is why it was done.
On cross-examination complainant stated that the property was not titled in her name and her husband’s name for the additional reason of avoiding income tax problems.
Complainant acquiesced and participated in a scheme to place title to the property in her parents’ name for fraudulent purposes contrary to public policy, and then sought the aid of the court to remedy the situation which she created. In Patterson v. Koerner, 220 Miss. 590, 71 So.2d 464 (1954), we held:
On the second proposition, it must be remembered that the appellant’s distress for which she sought the aid of the court, arose out of her participation in an act, not in good faith and not in the usual course of business, but in consummation of a scheme and plan to put her mother’s property beyond the reach of an execution, in event a judgment should be obtained in the prospective damage suit. She thereby participated in a potential fraud on the prospective judgment creditor. In Crabb v. Comer, 190 Miss. 289, 200 So. 133, this Court said: “It is one of the oldest maxims of the law that no man shall in a court of justice, take an advantage which has his own wrong as a foundation for that advantage.” Moreover, one of the maxims of equity is, “He who comes into equity must come with clean hands.” In other words, “It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.” Vol. 1 Pomeroy’s Equity Jurisprudence, 4th Ed., Section 397, page 738. (220 Miss, at 594, 595; 71 So.2d at 466).
In Thigpen v. Kennedy, 238 So.2d 744 (Miss.1970), after quoting Patterson, we stated further:
The maxim is often stated in the following language, “he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted.” The maxim is not to be lightly considered and brushed aside. It is the duty of the Court to apply it of its own motion when it becomes evident that the facts are such that they call for the application of the maxim. Griffith, Miss. Chancery Practice, § 42 (1950).
The fact that the parties in this case are in pari delicto does not aid appellee. The maxim is not invoked for the benefit of the parties to a fraudulent transaction, but rests upon the proposition that society must be protected. (238 So.2d at 746, 747).
The chancellor properly dismissed the bill of complaint at the conclusion of complainant’s testimony because complainant had participated in placing title to the land in her parents by fraudulent transfers against public policy, thus creating the situation for which she sought the aid of a court of equity. She did not come into court with clean hands.
Having concluded that complainant was not entitled to any relief under the clean hands doctrine, it is not necessary to consider whether a constructive trust existed or whether complainant ratified her former actions by her deeds executed in April, 1974.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.