SULLIVAN, Justice,
for the Court:
This divorce was heard in the Chancery Court of Lee County, Mississippi, Honorable Glenn Fant, Jr., special chancellor, presiding. At the conclusion of the hearing, the chancellor denied a divorce to Mrs. Shelton on the grounds that her testimony was uncorroborated and granted a divorce to Mr. Shelton, on the grounds of habitual cruel and inhuman treatment. Mr. Shelton *1358 also received the custody of the two children of the parties, ages 6 and 8. Mrs. Shelton was awarded periodic alimony and lump sum alimony but was denied a property settlement.
She has assigned five assignments of error. We take up only the first.
DID THE CHANCERY COURT ERR IN GRANTING JIMMY D. SHELTON ANY RELIEF?
Mrs. Shelton filed a motion to strike Mr. Shelton’s answer on the grounds that he was intimidating and harassing her witnesses or, in the alternative, for the court to enter an order enjoining him from such conduct.
Judy Franks testified concerning this motion. She stated that, subsequent to her testimony at the temporary hearing and her being subpoenaed to testify then, Mr. Shelton called her three or four times to discuss her testimony. Mr. Shelton told her if she said anything against him he would have her job; for her to watch and see what happened to another witness and then she would be afraid to testify. On cross-examination, Judy Franks said that she had previously worked for Mr. Shelton but had taken another job.
Tommy Franks, husband of the previous witness, testified that he had talked with Mr. Shelton concerning his and his wife’s testimony. He testified that Mr. Shelton once stated to him that Judy Franks would be sorry if she testified, but Mr. Shelton made no attempts to prevent Mrs. Franks or Mr. Franks from testifying, nor did Mr. Shelton make any threats to Mr. Franks to prevent him from testifying.
At the conclusion of the testimony concerning the motion, the chancellor stated, “on the undisputed testimony, I do find an instance of intimidation, ... I don’t know of any authority to strike this, but I do know that it is contemptuous.... ” The chancellor later executed an order enjoining Jimmy D. Shelton from intimidating or harassing witnesses, or carrying out threats already made.
Late in the trial, a conference in chambers was had concerning witness Shirley Holloway. Her deposition had been taken, the substance of which was that she had no material knowledge about the case. She told Mrs. Shelton’s lawyer outside the courtroom that she had lied during the deposition and wanted to testify truthfully at the trial.
Holloway testified in chambers first as to the alleged intimidation. In essence, she testified that she had lied at the deposition because of threats made by Mr. Shelton. Again, the chancellor signed an order enjoining Jimmy D. Shelton from any action against Holloway, though he pointed out that the witness had impeached herself. Mr. Shelton denied that he had intimidated or harassed any witnesses. Holloway later testified in the divorce proceedings that she had had an affair with Mr. Shelton. The chancellor did not believe her testimony.
He who comes into equity must come with clean hands. In Cole v. Hood, 371 So.2d 861, 863-64 (Miss.1979), we said the following:
He who comes into equity must come with clean hands. — It is the meaning and purpose of this maxim to declare that no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by willful inequity or illegality.... It may be described as such willful misconduct, in equity or fraud ... as would be condemned and pronounced wrongful by honest and fairminded men. It is not necessary that it be pleaded by the defendant — although it will require a plainer case if it is not so pleaded, — for if at any time during the progress of the case it becomes evident that the facts exist which call the maxim into use, it is the duty of the court to apply it, on the basis of a sound public policy....
Id. at 863-64, quoting Griffith, Mississippi Chancery Practice, § 42 (2nd Ed.1950). See also, Pearson v. Fortner, 386 So.2d 205 (Miss.1980); Vockroth v. Vockroth, 200 So.2d 459 (Miss.1967).
*1359 In Thigpen v. Kennedy, 238 So.2d 744 (Miss.1970), the Court said the following concerning the “clean hands” doctrine:
In Crabb v. Comer, 190 Miss. 289, 200 So. 133, 135, this Court said: “It is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage.” Moreover, one of the maxims of equity is, “He who comes into equity must come with clean hands.” In other words, “It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.” (citations omitted).
Id. at 746.
In Taliaferro v. Ferguson, 205 Miss. 129, 143, 38 So.2d 471, 473 (1949), another domestic case wherein a former spouse, the husband, was found to be in contempt but nevertheless was awarded a favorable modification, the Court said that, a “court of equity will never interfere and lend its aid to one whose own conduct in connection with the same transaction has been so un-conscientious and unjust, and has so violated the principles of equity and righteous dealing which it is the purpose of the very jurisdiction of the court to sustain.” The Supreme Court held that the court below should have refused to hear the petition to modify and should have dismissed it, so long as he remained in contempt. The Court reversed and awarded custody on appeal to the wife, subject to the chancery court making a proper modification at the proper time.
If, as the chancellor has found, witnesses have been intimidated or have been encouraged to testify falsely, the clean hands doctrine would be violated. This point is made explicit in 30 C.J.S. Equity § 95, 1022-25 (1965):
Conduct during, or with respect to, suit. One may be barred from relief by misconduct which occurred after the suit was brought, or by misconduct with reference to the suit itself. A litigant coming into equity must keep his hands clean throughout the litigation, even to the time of ultimate disposition by an appellate court.
... The maxim is applicable and relief may be denied, where the party seeking relief has been guilty of some unconscionable conduct, as, for example, inducing a witness to testify falsely.
Where, as here, intimidation has been found by one party and relief has been denied to the other party for that party’s failure to produce corroborating witnesses, it is difficult to perceive how the intimidating party can obtain relief at the hands of an equity court. The results of this trial may not have been unjust but the appearance of injustice is manifest.
If the chancellor believed that Mr. Shelton or agents on his behalf intimidated the witnesses of Mrs. Shelton, he should have imposed the doctrine of clean hands to deny Mr. Shelton relief from the chancery court, and Mrs. Shelton should not have been penalized for her inability to provide the corroborating witnesses in the face of the intimidation.
On the other hand, if Mr. Shelton had not intimidated witnesses, then the finding and various orders to that effect should not have been entered. Mr. Shelton is also entitled to a fair hearing on the issues in this case.
We, therefore, reverse the judgment of the Chancery Court of Lee County and remand the cause to the trial docket of the Chancery Court of Lee County, Mississippi, for a trial ab initio. The award of attorney’s fees to Mrs. Shelton for the use and benefit of her attorney is affirmed.
REVERSED AND REMANDED FOR TRIAL AB INITIO; AFFIRMED AS TO AWARD OF ATTORNEY’S FEES.
*1360 PATTERSON, C.J., WALKER, P.J., ROY NOBLE LEE, P.J., HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.