625 So.2d 786 (1993)
Houston COLLINS, Jr.
v.
Beverly COLLINS.
No. 91-CA-0037.
Supreme Court of Mississippi.
October 7, 1993.
*787 James D. Shannon, Hazlehurst, for appellant.
Robert W. Lawrence, Crystal Springs, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the court:
This appeal arises from a December 5, 1990, judgment of the Copiah County Chancery Court in a dispute over the conveyance of a title to real property. After a hearing, the chancellor dismissed Houston Collins' claim with prejudice and likewise, denied Beverly Collins' counterclaims for damages. Because the appellant comes into this Court with unclean hands, we affirm the chancellor's dismissal of his claims of fraud. On cross-appeal, we find that the chancellor correctly found that no actionable claim had arisen from Houston Collins' filing of a lis pendens notice, but reverse and remand on the issue of tortious interference with contract.

I.
Houston and Beverly Collins lived on property Houston owned in Hazelhurst. In December, 1984, Houston was tried and convicted for his third drug-related offense. He was sentenced as a recidivist to serve thirty years in the custody of the Mississippi Department of Corrections. Concerned that the State might seize his property to satisfy several substantial fines which had been levied against him, Houston conveyed the property by deed to Beverly on July 11, 1985. Houston testified that at the time of the conveyance, his understanding was as follows:

*788 We talked about if I put everything in her name, you know, once I got out and once everything blowed [sic] over, everything would come back to me... .
* * * * * *
We had talked, on and off, several occasions and, finally, I decided to do something about it, because she was steady getting worried that the State was going to put her and the kids outdoors, because everything was in my name, and by it being in my name, all these lots, they was gonna seize it.
Whatever the parties' understanding, nothing about the reconveyance was put into writing.
In May, 1987, while Houston was incarcerated, Beverly sought and obtained a divorce. His efforts to have one of his convictions reversed was successful and he was released from prison in May, 1988. Houston then tried to resume his relationship with Beverly. She rebuked his overtures as well as his attempts to move back into his former home. Further, she obtained a court order requiring Houston to "stay away and refrain from abusing or harassing" her.
On August 15, 1989, Beverly entered into an agreement to lease the property to Fred Tanner and his fiance for $275.00 a month. While Tanner was working on the property prior to moving in, Houston confronted him and stated, "No one stays in this house, unless it's Bev and the kids. I'll burn this so and so down before anybody moves in it other than them." Consequently, Tanner never took possession or paid his rent under the terms of the lease.
On October 16, 1988, Houston filed a lis pendens notice in the office of the Copiah County Chancery Clerk describing the property and stating his claim of ownership "by virtue of a complaint to be filed forthwith in the Chancery Court of Copiah County, Mississippi to set aside quitclaim deed(s)."
The lis pendens notice remained on file for more than a year prior before Houston filed his complaint seeking cancellation of the deeds to the property conveyed to Beverly. Houston alleged that Beverly:
falsely and fraudulently represented and promised to plaintiff, Houston Collins, that if Houston Collins would execute a quitclaim deed of his interest in the property to Beverly Collins due to the pending criminal charges against the plaintiff, then the defendant would execute a deed back to plaintiff when he was acquitted and released from prison. That the representation and promise were made by defendant with the further intent not to fulfill the same and were made to induce plaintiff to attach his signature to the deed and to procure the deed and gain title to the property.
Beverly denied the charges raised against her and filed a counterclaim against Houston alleging damages resulting from his filing of the lis pendens notice without "forthwith" filing the complaint, and his tortious interference with her rental contract of the property. Beverly further asserted that the lis pendens notice constituted a cloud on her title and should be cancelled. She sought actual and punitive damages as well as attorney fees.
After a hearing, the chancellor rendered his opinion stating:
Now, what we have here is a situation which I think is pretty well governed by a little noticed but a much respected maxim, which Judge Griffin sets out in his classic work, and that maxim is something like this. That he who does the fraud may not borrow the hands of the Chancellor to draw equity from a source his own hands have promoted. Now, this thing was conceived in inequity. The purpose that Houston Collins had at the outset was to deceive somebody, and so, he has started the whole ball of wax going, and now he wants to come in here and wants the Court to assist him in undoing something that he has done.
I have to find that he has not met the burden of proving, by clear and convincing evidence, that there is fraud in this case. If there was any fraud, it was his trying to defraud the State of Mississippi by trying to get rid of this property and keep the State from getting to it... . I think, inasmuch as the plaintiff has failed to meet the burden of proof, that the court has to dismiss his complaint, with prejudice. Insofar *789 as the damages on the Counter-Claim are concerned, I am troubled by the filing of a Lis Pendens, ... nevertheless, I think these parties were at a point where something needed to be done to try to bring the matter to a head, and while I know she was inconvenienced and, perhaps, delayed in what she wanted to do, I am not going to award any damage for what's taken place here. I'm going to simply hold that the deeds that were executed by Houston back there in 1985, are good and valid deeds, and that I have not been shown any reason in the world why these deeds should be set aside, and so, the property will remain vested in Mrs. Collins, just as it is vested, by virtue of these three deeds.
The trial court dismissed Houston's complaint, denied Beverly's counterclaim for damages and attorney fees, and enjoined Houston from interfering with Beverly's quiet enjoyment of title to the property.

II.
In our view, Houston confronts the gates of justice with unclean hands. From the evidence presented, it is clear that he initially deeded the property to Beverly for the sole purpose of thwarting the State's ability to seize it in payment of fines levied against him. In Thigpen v. Kennedy, 238 So.2d 744 (Miss. 1970), we addressed an analogous situation where two lots were purchased by one Alvin Kennedy from Lula Terrell, but titled in the name of Naomi Thigpen to prevent, delay, or hinder Kennedy's wife in any claim she might have for alimony in their impending divorce action. Kennedy then sought to impose a resulting trust or, alternatively, a decree directing Thigpen to reconvey legal title in the property to him. We held that transfers of this nature and for such purposes are in violation of the statute of frauds, contrary to public policy, and subject to the clean hands maxim. In reversing the trial court's action of granting Kennedy the relief he sought, we quoted language from Patterson v. Koerner, 220 Miss. 590, 71 So.2d 464 (1954):
In Crabb v. Comer, 190 Miss. 289, 200 So. 133, 135, this Court said: "It is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage." Moreover, one of the maxims of equity is, "He who comes into equity must come with clean hands." In other words, "It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Vol. 1 Pomeroy's Equity Jurisprudence, 4th Ed., Section 397, page 738. (220 Miss. at 594, 595, 71 So.2d at 466).
The maxim is often stated in the following language, "he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." The maxim is not to be lightly considered and brushed aside. It is the duty of the Court to apply it on its own motion when it becomes evident that the facts are such that they call for the application of the maxim. Griffith, Miss. Chancery Practice, § 42 (1950).
The fact that the parties in this case are in pari delicto does not aid appellee. The maxim is not invoked for the benefit of the parties to a fraudulent transaction, but rests upon the proposition that society must be protected. Furthermore, in order for the court to invoke the maxim, it is not necessary for the conduct to be of such a nature as to be punishable as a crime or even to justify legal proceedings of any character. Any wilful act concerning the cause of action which can be said to transgress equitable standards of conduct is sufficient to invoke the maxim.
Thigpen v. Kennedy, 238 So.2d at 746-47.
In this case, Houston's own testimony indicates that the title to his property was placed in Beverly's name to prevent the State from seizing it to enforce payment of the fine levied against him. Under the established facts, the chancellor properly denied Houston *790 the relief he sought. See Warner's Griffith, Mississippi Chancery Practice, Rev.Ed. § 42, p. 50 (1991).

III.
Turning next to Beverly's counterclaim for damages, we agree with the chancellor's dismissal of the claim based on Houston's filing of a lis pendens notice. As the name implies, lis pendens provides notice to the world that title to the property is involved in litigation of some type and may be subject to a legal judgment. It is analogous to filing a lien under the Uniform Commercial Code, providing notice in a centralized location that other interests in the property may arise. That Houston waited nearly a year before bringing this action in Chancery Court is of little consequence; Beverly has shown no evidence of resultant damages. Thus, we find that Houston's filing of a lis pendens notice is neither grounds for damages nor even a proper basis for a cause of action.
Her counterclaim for damages on grounds of tortious interference with contract, however, is somewhat more problematic. Though under a court order to stay away from the property and refrain from "harassing" Beverly, Houston confronted Fred Tanner, the lessee, who related that the following transpired:
Q Why did you think something was going to come up? Did Houston say anything to you?
A [W]e pulled in the driveway, and he was coming down from the house, and he told me, he say, "Don't nobody stays in that house unless it's Bev and those kids." I said, "Well, look, we fixing to rent it from her, because she say she's staying over where she's staying," ... .
* * * * * *
A [I] went in the yard and I told him, "Now, look, we made papers out to lease this land from Beverly," and she said that everything is okay... . He said, "No, no one stays in this house, unless it's Bev and the kids." He say, "I'll burn this so and so down before anybody moves in it other than them.["]
* * * * * *
A [H]e didn't threaten me, but he threatened to burn the place down, and I said, "Well, I'll be a fool to put my family there." I go to work at night, and something happened to it.
Q Well, the question is, did you take him seriously?
A Yeah, I took him serious, so I didn't go up there.
Q Well, was that the reason you didn't rent it, or because there was a dispute as to who owned it?
A My reason for not going up there, cause I didn't know what he might do.
Q Uh, huh.
A So, I just stayed out of it. I told Bev, "Until you get that cleared up, whatever it is, I don't want to jeopardize my family."
As a result of Houston's actions, Tanner refused to take possession or make the payments under the lease contract.
An action for interference with contract generally will lie against one who maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other party. In this context, "malicious" is defined as the intentional doing of a harmful act without legal or sound justification or excuse, in other words, the willful violation of a known right. 45 Am.Jur.2d Interference § 3, p. 281 (1969). Irby v. Citizens National Bank, 239 Miss. 64, 67, 121 So.2d 118, 119 (1960). The elements of the tort are:
1) that the acts were intentional and willful;
2) that they were calculated to cause damage to the plaintiffs in their lawful business;
3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
4) that actual damage and loss occurred.
*791 Galloway v. Travelers Insurance Co., 515 So.2d 678, 682-683 (Miss. 1987); Protective Service Life Insurance Co. v. Carter, 445 So.2d 215, 217 (Miss. 1983). See also Nichols v. Tri-State Brick and Tile, 608 So.2d 324, 328 (Miss. 1992) (identical elements applicable to tort of interference with prospective business advantage). Further, the complaining party must show that the defendant had knowledge of the contract in question. Carter, 445 So.2d at 217. These various elements need be proven only by a preponderance of the evidence. Id. at 216.
Because the chancellor's oral findings and final judgment reject Beverly's counterclaim for damages without addressing Houston's liability for her claim of tortious interference with contract, and, under the facts as presented in the record, these issues should be considered, we reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE, P.J., PRATHER, P.J., SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
SMITH, J., specially concurs with separate written opinion joined by LEE, P.J. and JAMES L. ROBERTS, Jr., J.
SMITH, Justice, specially concurring:
After careful consideration of the record and argument, I reluctantly must agree with the majority that there is no clear and convincing proof of fraud by Beverly Collins at the time of the execution of the three deeds concerning the subject property. All testimony indicated that there was no fraud by Beverly when she and Houston reached agreement on their plan and commenced action thereon. Houston v. Collins, Jr. and his attorney at that time, Carroll Rhodes, both testified to the lack of fraud in the beginning by Beverly Collins. Houston testified that he trusted his wife completely.
However, this is a case where both Houston and Beverly came into court with unclean hands, the two of them having clearly planned and participated in the scheme to prevent the State of Mississippi from seizing the three tracts of property for payment of fines imposed by the State in Houston's criminal conviction. As Houston put it, the idea was Beverly's. Also, Beverly promised to return the property by deed to Houston, upon his release from prison, the statute of frauds notwithstanding. Beverly does not strike me as the "naive wife" portrayed by the majority. It seems unfair and inequitable to allow Beverly to reap any benefit of her action to defraud the State in view of her role, just as much as the majority finds that Houston has no right to prevail due to the "clean hands doctrine."
The clear loser in this case appears to be Mrs. Nancy Collins, Houston's mother. The record reveals the property was purchased by her and titled in her name. Houston needed a place to locate his mobile home and convinced his mother to put all the property in his name. He never paid her one cent for any of the three lots. Houston and Beverly, in their scheme to avoid seizure of the property by the State of Mississippi, carried out their plan by having Houston execute three quitclaim deeds placing the property in Beverly's name. Beverly may not have harbored fraudulent intent against Houston in the beginning, but she very quickly reneged on her promise to deed the property back to Houston upon his acquittal by this Court, or his release from Parchman Penitentiary.
Mrs. Nancy Collins is the only innocent victim with "clean hands" in this entire proceeding. But she was not a party, having failed to file any pleadings before the court for intervention to protect her family property. Had she done so I suspect the outcome on appeal might be totally different. It most definitely would be with this writer.
DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., JJ., concur with this opinion.