970 So.2d 193 (2007)
Rickey W. ELLZEY, Appellant
v.
Sherry L. JAMES, Formerly Sherry L. Waller, Appellee.
No. 2006-CA-00758-COA.
Court of Appeals of Mississippi.
November 20, 2007.
Pamela Lynn Huddleston, attorney for appellant.
Henry S. Davis, Jr., John L. Jeffries, Laurel, attorneys for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Rickey W. Ellzey filed a complaint in the Chancery Court of Jones County praying for the return of mineral interests which Ellzey had transferred to Sherry L. James in an effort to conceal his assets from Medicaid. The chancellor determined James to be the sole owner of the mineral interests, and Ellzey has appealed.
¶ 2. We find that the chancellor acted within his discretion in determining that Ellzey was not entitled to any relief because he came into court with unclean hands. Therefore, we affirm.

FACTS
¶ 3. Ellzey and James began living together in Jones County in 1979. Subsequently, Ellzey's father died and he inherited certain real property in Jones County. In 1994, Ellzey had a heart transplant procedure that necessitated subsequent treatment and medication. Due to his sporadic work history, Ellzey did not qualify for Social Security disability benefits. However, he did qualify for Medicaid assistance.
¶ 4. While receiving assistance from Medicaid, Ellzey learned that an oil well on his inherited property had begun producing *194 and that he would soon receive royalty checks. As Ellzey states in his brief, he feared these royalty checks might "have a detrimental effect on his overall health" by affecting his Medicaid eligibility. Ellzey resolved to combat this detrimental effect by conveying the mineral interests to James. On December 6, 1999, Ellzey executed a deed conveying all his mineral interests in the property to James. F.L. Sam Ellzey, a notary and Ellzey's uncle, acknowledged the deed, and it was recorded in the land records of Jones County. Ellzey and James both testified that the purpose of this transfer was to conceal Ellzey's royalty income from Medicaid.
¶ 5. F.L. Sam Ellzey testified that, on December 6 or 7, 1999, James executed a deed reconveying the property to Ellzey. F.L. Sam Ellzey stated that he notarized this deed as well. A copy of the purported reconveyance deed was admitted into evidence. However, the copy was not dated, did not bear a notary's seal, did not include an acknowledgment, and did not show it had been recorded. Ellzey stated that he thought the original deed had been stolen. He testified that he had anticipated his medical expenses would decrease after fourteen months and intended to have James convey the mineral interests back to him at that time. Ellzey related that, after the fourteen months expired, James refused to reconvey the mineral interests.
¶ 6. Thereafter, the parties separated and Ellzey filed the complaint requesting the return of the mineral interests. James filed a cross-complaint to recover certain personal property, which is not at issue in this appeal. The court adjudicated the matter of the personal property and continued the case to join the Mississippi Medicaid Commission as a party. However, the Medicaid Commission was dismissed from the case after declining to participate and seek recovery of any funds paid to Ellzey.
¶ 7. At the hearing, Ellzey argued that he was entitled to a return of the mineral interests because the reconveyance deed, though unrecorded and defectively acknowledged, was effective between himself and James. Ellzey advanced the alternative argument that his transfer to James created a trust in which the minerals were being held for his benefit. The chancellor found that it was undisputed that the original deed from James to Ellzey was lost or destroyed, and that the only evidence of the deed was a photocopy without an acknowledgment. The chancellor found that the copy was not a reproduction of the whole original deed and, therefore, was not an accurate copy or representation of the original. The chancellor observed that, normally, the court could exercise its equitable powers to determine that the partial copy of the deed could be substituted for the original and recorded in the land records. However, the chancellor declined to employ this remedy because Ellzey was before the court with unclean hands and "the Law does not allow a Court of Equity to help him recover what he lost by defrauding the State of Mississippi." The court found the mineral rights and royalties to be the sole property of James.

LAW AND ANALYSIS
I. WHETHER THE COURT ERRED IN DECLINING TO AWARD THE DISPUTED MINERAL INTERESTS TO ELLZEY DESPITE A VALID DEED.
¶ 8. Ellzey argues that the chancellor erred by finding James to be the sole owner of the mineral interests. Ellzey points out that the copy of the reconveyance deed in evidence showed James's signature and that James admitted it was her signature at the hearing. He further avers *195 that F.L. Sam Ellzey witnessed the execution of the original reconveyance deed and notarized it. For these reasons, Ellzey contends, the reconveyance deed was valid between Ellzey and James.
¶ 9. Mississippi Rule of Evidence 1002 states that, to prove the contents of a writing, the original is required, unless otherwise provided by law. Under Rule 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The chancellor found that the copy of the reconveyance deed did not accurately represent the original because it was a partial copy. While "[i]t is settled law in this state that a deed defectively acknowledged may still be good between the parties to it," Cotton v. McConnell, 435 So.2d 683, 687 (Miss.1983), any validation of the conveyance from James to Ellzey would have required the intervention of the chancellor in determining from all of the facts that the partial copy of the deed could be substituted for the original deed. The chancellor refused to aid Ellzey in this manner because Ellzey sought assistance from the court to cure a problem which Ellzey had himself created with his scheme to defraud the Medicaid Commission.
¶ 10. In determining that Ellzey was not entitled to any relief, the chancellor applied the maxim that "he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." Collins v. Collins, 625 So.2d 786, 789 (Miss.1993) (quoting Thigpen v. Kennedy, 238 So.2d 744, 746-47 (Miss.1970)). This maxim has been applied in cases in which a claimant sought the court's aid in returning property which the claimant had transferred to another with the purpose of defrauding a third party. In Thigpen, the plaintiff conveyed property to his girlfriend in order to conceal it from his wife in a pending divorce suit. Thigpen, 238 So.2d at 746. He later sued the girlfriend to recover the property or for the establishment of a resulting trust. Id. at 745-46. The court found that the transfer was in violation of the statute of frauds and contrary to public policy and, therefore, the plaintiff was not entitled to any relief. The court summarized the law as follows:
In Crabb v. Comer, 190 Miss. 289, 200 So. 133, 135, this Court said: "It is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage." Moreover, one of the maxims of equity is, "He who comes into equity must come with clean hands." In other words, "It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Vol. 1 Pomeroy's Equity Jurisprudence, 4th Ed., Section 397, page 738.
Id. at 746 (quoting Patterson v. Koerner, 220 Miss. 590, 594-95, 71 So.2d 464, 466 (1954)). The court continued:
The maxim is often stated in the following language, "he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." The maxim is not to be lightly considered and brushed aside. It is the duty of the Court to apply it of its own motion when it becomes evident that the facts are such that they call for the application of the *196 maxim. Griffith, Miss. Chancery Practice, § 42 (1950).
Id. at 746-47.
¶ 11. The court applied these principles in Willenbrock v. Brown, 239 So.2d 922, 923 (1970), in which the plaintiff opened a bank account in the name of Willenbrock in order to conceal funds from his estranged wife. At the wife's insistence, a receiver had been appointed to take possession of the husband's assets. Id. A creditor, Brown, recovered a default judgment against Willenbrock and a writ of garnishment was issued against the bank. Id. The plaintiff claimed that the funds were his. Id. The court found the plaintiff was not entitled to the funds, having "placed himself in this unfortunate position by an act, not in the usual course of business, but in furtherance of a plan to place his assets beyond the reach of his wife in pending litigation." Id. at 925. Because the plaintiff's own wrong was the foundation of the advantage he sought from the court, the court did not interfere on his behalf. Id.
¶ 12. In Walters v. Patterson, 531 So.2d 581, 584 (Miss.1988), Walters sought the return of property he had transferred to Patterson with the purpose of concealing it from the United States Internal Revenue Service. Walters asserted that he and Patterson had reached an oral agreement that Walters would be permitted to redeem the property in the future. Id. at 582. The supreme court observed that the transfer for the purpose of tax evasion was contrary to public policy and violated the statute of frauds. Id. at 584. The court found the case was appropriate for the application of the maxim that "he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted," and affirmed the dismissal of Walters's petition. Id. at 585.
¶ 13. In Collins, a husband, convicted of drug crimes, conveyed property to his wife to avoid fines levied by the State. Collins, 625 So.2d at 787-88. After securing a reversal of his conviction, the husband sued the wife for return of the property, asserting that the two had agreed she would execute a deed back to him upon his acquittal. Id. at 788. The court found that the husband was before the court with unclean hands because the evidence clearly showed he deeded the property to his wife intending to defraud the State of Mississippi. Id. at 789. The court found that the husband could not gain assistance from the courts in securing the property's return because "he who doeth fraud, may not borrow the hands of the chancellor to draw equity from a source his own hands hath polluted." Id. The court observed that, for application of the maxim, the conduct need not be criminal in nature or sufficient to justify legal proceedings, but there must be a "wilful act concerning the cause of action which can be said to transgress equitable standards of conduct." Id.
¶ 14. In this case, Ellzey transferred the mineral interests to James in order to conceal his assets from Medicaid. As in each of the aforementioned cases, Ellzey invoked the aid of the chancery court to remedy a problem created by his own fraudulent act. The chancellor appropriately held that Ellzey was not entitled to relief because he sought to use "the chancellor's hands to draw equity from a source his own hands ha[d] polluted." Therefore, we affirm the decision of the chancery court.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*197 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.